Guy Gilbert Ribaudo, J.
Motion for summary judgment denied.
On June 5,1961, the Housing and Redevelopment Board of the City of New York adopted certain rules and regulations requiring payment of a management supervision fee of $1 per rental room per annum by companies formed under the Redevelopment Companies Law of New York. The defendant, North Queens-view Homes, Inc., has refused to pay the adopted management fees and this motion is now brought by the plaintiff for summary judgment in the amount of $8,073.
The original contract dated June 11, 1953, was between the defendant, North Queensview Homes, Inc., and the Comptroller of the City of New York. The Housing and Redevelopment Board is the successor to the Comptroller in regard to the provisions of this contract between the City of New York and the defendant. (New York City Charter, eh. 50, § 1134, subd. a.) Under the agreement, the defendant was to receive partial tax exemption for a period of 25 years (paragraph 306). It is not a disputed fact that the defendant continues to enjoy partial tax exemption. Under subdivision e of section 1135 of chapter 50 of the City Charter, the Housing and Redevelopment Board is granted additional power, including the “ power to impose and collect charges and fees for the financing, regulation, supervision and audit of municipally-aided projects [emphasis added] and loan programs which it is empowered to administer hereunder, which charges and fees shall be set aside in a special account for administration expenses of the board ”.
The question arises as to whether the defendant is a municipally-aided project as contemplated by the City Charter. The defendant relies on the definition of a municipally-aided project as set forth in subdivision 17 of section 2 of the Private Housing Finance Law which defines a municipally-aided project as a limited profit housing company project which is aided by a municipal mortgage loan or tax exemption or both and is not aided by any State mortgage loan or by a New York State housing finance agency loan.
The contention of the defendant does not appear valid. The construction placed by the defendant is restrictive rather than broad as a power-granting section of the City Charter should be construed. There is no reason to define a municipally-aided project as defined in the Private Housing Finance Law. Rather, *434 it would seem that the intention of the charter is to permit the supervising agency, the 'Housing and Redevelopment Board, to collect fees for all the projects which it supervises and administers and aids in any way whether by direct loan or by tax exemption. In interpreting statutes granting powers to administrative agencies, the courts usually favor a liberal interpretation to effectuate the purposes and objectives of the statute (3 Sutherland, Statutory Construction [3d ed.], § 6004).
In addition to the City Charter, sections 117 and 118 of the Private Housing Finance Law which grant the supervising agency the power to make rules and regulations to carry out its powers and duties and permits the supervising agency to adopt a reasonable schedule of fees to be paid by the redevelopment companies for the audit, regulation and general supervision of the management of the company, which fees shall be set aside in a separate account and shall be used to pay for expenses of administering and carrying out the provisions of the redevelopment companies law. This legislation became effective March 1, 1962, some nine months after the schedule of fees in question had already been adopted. This legislation clearly sets forth the right of the supervising agency to adopt a reasonable schedule of fees. This is not to mean, however, that the supervising agency did not have the right prior to the enactment of this legislation. The court finds that the State, in setting forth its legislative objective in section 11 of the Private Housing Finance Law, declared that the State participation was necessary to increase the supply of adequate housing; that to accomplish this purpose it was necessary to loan public money and grant tax exemption and that companies be created, such as the defendant, to accomplish the desired ends. The defendant accepted public assistance and regulation. Paragraph 307 of the agreement of the City of New York with the defendant establishes the price of $19.75 per room, and if a 6% profit is not being made an application by the defendant can be made to the Board of Estimate. Under the circumstances, the defendant is subject to continuing control of the supervising agency and the provisions of the City Charter were sufficient to grant plaintiff the power to adopt a reasonable schedule of fees.
The more serious questions before the court are whether the schedule of fees was duly adopted and whether ’ the fee schedule established was reasonable.
The supervising agency, despite its recognized power, must exercise it in accordance with generally recognized principles of administrative due process. The Uniform Law Commis *435 sioners, in setting up a model State Administrative Procedure Act, speak of the basic principles of common sense, justice and fairness which should prevail. Among the requirements is that procedure and substantive rule making should be accompanied by notice to all interested persons with opportunity granted to the affected party to submit views or information (1 Davis, Administrative Law Treatise, § 1.04). See, also, Reports of Law Revision Commission 1966, 1967 relating to Administrative Procedure Act, Administrative Rule Making Procedure Act, and a Division of State Administrative Procedure Law.
Here there is no allegation that any notice was given by the agency prior to enactment of the schedule of fees. No hearings have been conducted, and the defendant has not been given an opportunity to present its views as to the reasonableness of the fees; on judicial review the defendant will be afforded such opportunity. The court cannot pass on whether the fee charged of $1 per rental unit is reasonable without a trial. This is an issue of fact which requires testimony and a presentation of facts leading to its enactment in order to determine its reasonableness. Due process embraces at the very least the right to be heard before an administrative agency or before a court of law (1 N. Y. Jur., Administrative Law, § 126). The due process clause has been held applicable and a hearing has been held a right apart from statute in an action on an assessment for local improvement (Stuart v. Palmer, 74 N. Y. 183).
In administrative agency proceedings which are final and conclusive and which deprive an individual of life, liberty or property there must be a notice and hearing. To have neither of these rights is to be abandoned to the dubious mercy of arbitrary power — an intolerable condition which the law does not permit. (Fucelli v. American Soc. for Prevention of Cruelty to Animals, 23 N. Y. S. 2d 983.) The defendant here is not an individual but a public creature established in accordance with the police power of the State, but this is not to say that once established it must not be treated in accordance with the rules of fair play. No administrative hearing having been held, a judicial hearing will be had here in this court as part of the enforcement proceeding. The motion, therefore, is denied.